UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLYDE HOUSTON PHILLIP, JR.,

                Petitioner,

v.                               CASE NO. 2:18-cv-10779
                               HONORABLE ARTHUR J. TARNOW

SHANE JACKSON,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Clyde Houston Phillip, Jr., filed a *pro se* habeas corpus petition challenging his state convictions for first-degree home invasion, Mich. Comp. Laws § 750.110a(2), assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, and assault by strangulation, Mich. Comp. Laws § 750.84(1)(b). The State urges the Court to deny the petition because Petitioner's claims lack merit, are not cognizable on habeas review, or are unexhausted. The Court agrees that Petitioner's claims do not warrant habeas relief. Accordingly, the Court will deny the petition and dismiss this case.

## I. Background

Petitioner was charged in Wayne County, Michigan with unarmed robbery, first-degree home invasion, assault with intent to do great bodily harm less than

murder, and assault by strangulation.  The charges arose from an unauthorized entry of Linda White's apartment in Inkster, Michigan, followed by the choking of White and the theft of some of White's belongings.

Petitioner was tried before a judge in Wayne County Circuit Court.  The Michigan Court of Appeals described the facts established at Petitioner's bench trial as follows:

> At approximately 2:00 p.m. on October 14, 2013, White sat in her ground floor unit in an Inkster apartment complex.  She noticed defendant standing near her sliding glass door.  White opened her door slightly to speak to defendant. Defendant asked to borrow her phone, but White refused.  He then requested a drink of water.  White went to the kitchen and turned her back on the door while she reached for a cup. Defendant approached White from behind and grabbed her neck to choke her.  White was able to turn around and tried to scream but defendant covered her mouth.  Defendant continued to strangle White until she lost consciousness.
>
> When White awoke, defendant was gone, and so was her jewelry and television.  She contacted the police and described her assailant as a dark-skinned African–American man of "large build," who was approximately 6 feet 4 inches tall and 210 to 220 pounds.  White remembered that he had "a 5 o'clock shadow."  White recognized her assailant as someone she had seen walking through the complex before.
>
> The following evening, an anonymous caller reported that White's assailant was walking through the apartment complex again.  The caller described what the man was wearing at that time.  Inkster police officers arrived and found defendant, who was dressed as described by the caller

and fit the description provided by White.[1]  Defendant told the officers that he was at the complex visiting someone, but did not identify that person.  Believing defendant's behavior to be suspicious, the officers took him into custody.

*People v. Phillip*, No. 324675, 2016 WL 1445238, at *1 (Mich. Ct. App. Apr. 12, 2016) (footnote in original).

Lamar Wheeler was the only defense witness.  He testified that he and Petitioner were romantically involved and that they were living with Wheeler's mother on the day of the crime.  He claimed that he and Petitioner spent that entire day together and that he did not lose sight of Petitioner.  Although they walked near White's apartment complex and saw Petitioner's brother and two other acquaintances, he did not see Petitioner assault or strangle anybody or take a television.  In fact, they saw somebody else walking with a television at the apartment complex.  The next day, Petitioner left their apartment and did not return.  Wheeler later learned that Petitioner had been arrested.  *See* 6/20/14 Trial Tr. at 42-74, ECF No. 7-7, PageID.321-353.

On June 20, 2014, the trial court acquitted Petitioner of the robbery charge, but found him guilty of first-degree home invasion, assault with intent to do great

---

[1] According to the Department of Corrections website, defendant is 6 feet 2 inches tall and on January 2, 2015, weighed 200 pounds.  The site includes defendant's photograph, depicting a dark-skinned man with a shadowy beard.

3

bodily harm less than murder, and assault by strangulation.  The trial court sentenced Petitioner to concurrent terms of 94 months (seven years, ten months) to twenty years in prison for the home invasion and four to ten years in prison for the two assaults.  The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished, *per curiam* opinion, *see Phillip*, 2016 WL 1445238, and on November 30, 2016, the Michigan Supreme Court denied leave to appeal.  *See People v. Phillip*, 500 Mich. 898; 887 N.W.2d 421 (2016) (table).

Petitioner subsequently filed a habeas action, which this Court dismissed without prejudice because Petitioner failed to comply with a deficiency order.  *See Phillips (sic) v. Harry*, No. 2:17-cv-13822 (E.D. Mich. Jan. 31, 2018).  About five weeks later, Petitioner filed his current petition, which alleges as grounds for relief that (1) his pretrial line-up was suggestive, (2) he was illegally detained, (3) the evidence was insufficient, and (4) his trial attorney was ineffective.  *See* Pet. for Writ of Habeas Corpus, ECF No. 1, PageID.5, 14, 22, 26.

The State moved to dismiss the petition, *see* ECF No. 8, but the Court denied the motion because the habeas petition was timely under the "prison mailbox rule." *See* ECF No. 10.  The State then filed an answer to the petition in which it argues that Petitioner's first and third claims lack merit, his second claim is not cognizable

on habeas review, and his fourth claim is unexhausted and meritless.  *See* Answer in

Opp'n to Pet., ECF No. 11, PageID.596-597.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of a

state court's factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme Court

on a question of law or if the state court decides a case differently than the Supreme

Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S.

362, 405-06 (2000).  An "unreasonable application occurs" when "a state-court

decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "Only an 'objectively unreasonable' mistake, . . . , one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir.) (quoting *Richter*, 562 U.S. at 103), *cert. denied*, 140 S. Ct. 445 (2019).

### III.  Discussion

## A.  The Pretrial Line-Up

Petitioner's first claim challenges the trial court's denial of his motion to suppress White's identification of him at the pretrial line-up and the court's denial of his motion for new trial.  Petitioner alleges that the line-up was suggestive and

conducive to mistaken identification because:  White identified him as number three in the line-up, but number six in a photo array that was entered in evidence; White picked him out of the line-up because he had hateful eyes and looked guilty; there were inconsistencies in White's trial testimony and the description of the suspect that she gave to the police; White viewed the line-up from approximately twenty feet away; former Detective Anthony Delgreco's testimony that the line-up attorney rearranged the suspects differed from the line-up attorney's testimony on that issue; and Delgreco's testimony that there was no photograph of the individuals in the line-up was a lie, because the photo array existed.  Petitioner also alleges that his trial attorney was ineffective for failing to argue that White misidentified him because she chose number three in the line-up even though he was number six in the photo array.  *See* Pet., ECF No. 1, PageID.5-12.

The Michigan Court of Appeals adjudicated Petitioner's claim on the merits. It concluded that the trial court did not err in denying Petitioner's motion to suppress and that the trial court acted within its discretion when it denied Petitioner's motion for a new trial.

### 1.  Clearly Established Federal Law

"The Constitution . . . protects a defendant against a conviction based on evidence of questionable reliability . . . ."  *Perry v. New Hampshire*, 565 U.S. 228,

237 (2012).   An identification procedure violates due process of law if the confrontation was " 'unnecessarily suggestive and conducive to irreparable mistaken identification.' "   *Neil v. Biggers,* 409 U.S. 188, 196 (1972) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)).

> To be " 'impermissibly suggestive,' " the procedure must " 'give rise to a very substantial likelihood of irreparable misidentification.' " *Id.,* at 197, 93 S.Ct. 375 (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)).   It is not enough that the procedure "may have in some respects fallen short of the ideal." *Id.,* at 385–386, 88 S.Ct. 967.

*Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2559 (2018) (per curiam).

> Even when an unnecessarily suggestive procedure was used, "suppression of the resulting identification is not the inevitable consequence." *Perry,* 565 U.S., at 239, 132 S.Ct. 716. Instead, "the Due Process Clause requires courts to assess, on a case-by-case basis, whether improper police conduct created a 'substantial likelihood of misidentification.' " *Ibid.* (quoting *Biggers, supra,* at 201, 93 S.Ct. 375). "[R]eliability [of the eyewitness identification] is the linchpin' of that evaluation." *Perry, supra,* at 239, 132 S.Ct. 716 (quoting *Manson [v. Brathwaite,* 432 U.S. 98, 114 (1977)]; alterations in original).  The factors affecting reliability include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Id*., at 114, 97 S.Ct. 2243.

*Id*.   "If an identification is reliable, it will be admissible even if the confrontation was suggestive." *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005).

## 2. Application

### a. Suggestiveness

The line-up in Petitioner's case was not ideal.  Although all six of the people in the line-up were black men who were at least six feet tall and over 200 pounds in weight, the ages of the men varied significantly.  Petitioner was 31 or 32 years old at the time, but two men were in their late teens, two other men were in their mid-twenties, and one man was almost fifty years old.  *See* 4/23/14 Mot. Hr'g Tr. at 41-43, ECF No. 7-4, PageID.178-180.  Thus, only two other men in the line-up were somewhat close to Petitioner's age.

Petitioner was also the tallest man at six feet, four inches, according to his arrest record, while four of the men in the line-up were only six feet tall.  *See* 6/20/14 Trial Tr. at 36, ECF No. 7-7, PageID.315.   Petitioner's height was significant because White described the suspect to the police as approximately six feet, four inches tall.  *See* 6/20/14 Trial Tr. at 8, ECF No. 7-7, PageID.287.  Nevertheless, one man was six feet, three inches tall, *id*., and White testified that she did not pick Petitioner out of the line-up because of his height.  Instead, she relied on his facial features, particularly his eyes.  *See* 5/2/14 Trial Tr. at 49, ECF No. 7-6, PageID.271.

Detective Delgreco, moreover, testified at a pretrial hearing that the line-up attorney's only objections to the line-up were the way the men were arranged and the fact that three men had their heads down.  After the attorney rearranged the men, she was satisfied. *See* 4/23/14 Mot. Hr'g at 39-40, ECF No. 7-4, PageID.176-177.

The line-up attorney testified at the hearing that she could not recall whether she had asked to rearrange the men in the line-up and that line-up attorneys are not permitted to move the people who are in line-ups.  But because she had no notes on Petitioner's line-up, she concluded that nothing remarkable happened.  *Id.* at 6, PageID.143.

Furthermore, the record does not support Petitioner's allegation that, because he was number six in the photo array, White misidentified him when she chose number three at the line-up.  The line-up form listed the names of the men used in the line-up, their positions in the line-up, and their height, weight, and birthdates. Petitioner was number three on the line-up form, *see* Pet., Ex. A, ECF No. 1, PageID.38, and in the line-up where White identified him as the man who assaulted and robbed her.  *See* 6/20/14 Trial Tr. at 32, ECF No. 7-7, PageID.311.

Petitioner was number six in the photo array, which consisted of six pictures and the names of the men pictured in the array.  *See* Pet., Ex. A. ECF No. 1, PageID.36.  Delgreco testified at trial that the men pictured in the photo array were

the same people that were in the line-up which White viewed.  *See* 6/20/14 Trial Tr.

at 31, ECF No. 7-7, PageID.310.  He appears to have been mistaken, however,

because the photo array was prepared about two weeks before the line-up, and,

except for Petitioner, the men pictured in the array are a completely different set of

men from the men in the line-up.  *Cf.* Pet., Ex. A, ECF No. 1, PageID.36 with

PageID.38.

Furthermore, White could not have been influenced by the photo array

because Delgreco did not show the photo array to White.  *See* 4/23/14 Mot. Hr'g Tr.

at 46-47, ECF No. 7-4, PageID.183-84; 6/20/14 Trial Tr. at 31, ECF No. 7-7,

PageID.310.  The photo array was prepared a few days after Petitioner's arrest,

because Delgreco thought that Petitioner might be released before Delgreco could

conduct the live line-up; ultimately, however, he never used the photos.  *See* 4/23/14

Mot. Hr'g Tr. at 46, ECF No. 7-4, PageID.183.

### b.  Reliability of the Identification

Even if the line-up were unnecessarily suggestive, White had a good

opportunity to view her assailant at the time of the crime.  She claimed that she saw

him for about thirty to forty minutes and that she was "nose to nose," or at least "face

to face" with him at times. *See* 5/2/14 Trial Tr. at 23, 32, 42, ECF No. 7-6,

PageID.245, 254, 264.

It also appears that White's degree of attention during the confrontation was good, because she recognized Petitioner's eyes at the line-up, *id*. at 49, PageID.271, and her description of the suspect immediately after the crimes fit Petitioner. She told the responding officer that the suspect was a black male with a large build, about six feet, four inches tall, and about 210 to 220 pounds. He had a dark complexion and a "five o'clock shadow." *See* 6/20/14 Trial Tr. at 8, ECF No. 7-7, PageID.287. On the following day, the arresting officer described Petitioner as six feet, five inches tall and 210 pounds. *See* 4/23/14 Mot. Hr'g Tr. at 30-31, ECF No. 7-4, PageID.167-168.

White must have been certain of her identification, because she identified him at the lineup within a matter of seconds. *Id*. at 47-48, PageID.184-185; 6/20/14 Trial Tr. at 32-33, ECF No. 7-7, PageID.311-312. Finally, the time between the crime and the pretrial lineup was relatively short: about two weeks.

The Court concludes from the totality of the circumstances, that White's identification of Petitioner was reliable even if the pretrial line-up was unnecessarily suggestive. Therefore, evidence of White's pre-trial identification of Petitioner was admissible at trial.

Petitioner's related claim that his trial attorney failed to argue the misidentification issue fails, because even though defense counsel did not emphasize

at trial the difference between Petitioner's position in the line-up and in the photo array, he did raise and argue the issue in a motion for new trial and at Petitioner's sentencing. *See* 9/16/14 Sentencing Tr. at 3-5, ECF No. 7-8, PageID.373-375. The trial court rejected the argument and said that, even if counsel was correct, and even assuming that the line-up was bad, White's identification of Petitioner was sufficient evidence to substantiate the charges. *Id*. at 3-4, PageID.373-374. The trial court's rejection of the misidentification issue shows that counsel's allegedly deficient performance did not prejudice Petitioner.

Petitioner's additional allegations about inconsistencies in White's and Delgreco's testimony, White's ability to view the line-up, and White's comment about Petitioner's eyes are attacks on the reliability of the identification and the credibility of witnesses. Such arguments "relate to the weight to be given to the identification, not its admissibility." *Cornwell v. Bradshaw*, 559 F.3d 398, 416 (6th Cir. 2009). So long as there is not a substantial likelihood of misidentification, it is the function of the finder of facts to determine the ultimate weight to be given the identification. *Summitt v. Bordenkircher*, 608 F.2d 247, 253 (6th Cir. 1979) (citing *Manson v.* Brathwaite, 432 U.S. 98 (1977)).

The Court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court." *Marshall v. Lonberger,* 459

U.S. 422, 434 (1983). "It is the province of the factfinder, here the state trial court, to weigh the probative value of the evidence and resolve any conflicts in the testimony." *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992). Petitioner, therefore, has no right to relief on his challenge to the pretrial line-up.

## B.  The Arrest and Detention

Petitioner alleges next that there was no probable cause to arrest him and, therefore, he was illegally detained after his arrest at White's apartment complex on the day after the crimes.   *See* Pet., ECF No. 1, PageID.14-21.  He filed a pretrial motion to suppress all evidence derived from his arrest because the arrest was based on an anonymous tip.   The trial court held a hearing and denied the motion. Although Petitioner contends that the trial court erred in denying his motion, the Michigan Court of Appeals discerned no error in the trial court's denial of the motion.

Petitioner's claim derives from the Fourth Amendment, which states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV.  In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held  that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a

state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494 (internal and end footnotes omitted). "[T]he *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013).

Petitioner had a full and fair opportunity to raise his claim in state court, and he took advantage of the opportunity. He first raised his Fourth Amendment claim in a motion to suppress evidence. He argued that the anonymous tip was an insufficient basis for arresting him. The trial court held an evidentiary hearing on Petitioner's claim and denied the motion after reviewing the totality of the circumstances and concluding that an intervening factor (two outstanding arrest warrants against Petitioner) rendered exclusion of evidence inappropriate. *See* 4/30/14 Mot. Hr'g at 15-18, ECF No. 7-5, PageID.211-214.

Petitioner also raised his claim in the Michigan Court of Appeals and in the Michigan Supreme Court. The Court of Appeals thoroughly discussed the claim under state and federal law and concluded that, because the arresting officers'

conduct was not egregious or based in bad faith, the trial court did not err in denying Petitioner's motion to suppress.

Petitioner's presentation of his claim to the state courts suffices to preclude review of the claim in a habeas corpus petition. *Good*, 729 F.3d at 640; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012) (stating that, because the petitioner had ample opportunities to present his Fourth Amendment claims in state court, he was precluded from obtaining habeas relief on the claims). Therefore, Petitioner's Fourth Amendment claim is not cognizable here.

Petitioner's claim also lacks substantive merit because an "illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). Petitioner has no right to relief on his claim.

## C. The Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence at trial to support his convictions. Specifically, Petitioner asserts that the prosecution presented insufficient evidence for a rational trier of fact to conclude that he committed the crimes. He relies on certain inconsistencies in the testimony, and he attacks White's pretrial and in-court identifications of him. *See* Pet., ECF No. 1, PageID.22-24. The Michigan Court of Appeals adjudicated Petitioner's claim on the merits and rejected

it because the trial court could determine beyond a reasonable doubt that Petitioner committed the crimes.

### 1. Clearly Established Federal Law

In a habeas case, the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original).   "Circumstantial evidence may support a conviction, *McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir. 2003), and such evidence need not remove every reasonable hypothesis except that of guilt.  *Walker v. Russell,* 57 F.3d 472, 475 (6th Cir. 1995)."  *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).  Furthermore, as the Sixth Circuit Court of Appeals recently explained, under AEDPA,

> a federal court's "review of a state-court conviction for sufficiency of the evidence is very limited." *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018).  Sufficiency-of-the-evidence claims, in light of both *Jackson* and AEDPA, face a high bar in habeas proceedings because they are subject to two layers of deference:

> First, on direct appeal, it is the responsibility of the jury—
> not the court—to decide what conclusions should be
> drawn from evidence admitted at trial. A reviewing court
> may set aside the jury's verdict on the ground of
> insufficient evidence only if no rational trier of fact could
> have agreed with the jury. And second, on habeas review,
> a federal court may not overturn a state court decision
> rejecting a sufficiency of the evidence challenge simply
> because the federal court disagrees with the state court.
> The federal court instead may do so only if the state court
> decision was objectively unreasonable.

*Coleman v. Johnson*, 566 U.S. 650, 651, 132 S.Ct. 2060, 182 L.Ed.2d 978 (2012) (per curiam) (citations and internal quotation marks omitted).

*Tackett v. Trierweiler*, 956 F.3d 358, 367 (6th Cir. 2020).

### 2. Application

Ordinarily, "[t]he *Jackson* standard 'must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.' " *Id*. (quoting *Jackson*, 443 U.S. at 324 n.16). Petitioner, however, is not claiming that the prosecutor failed to satisfy the elements of the crimes for which he is incarcerated. Instead, he is challenging White's identification of him.

"The identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003) (citing *People v. Turrell*, 181 N.W.2d 655, 656 (1970)). But "the testimony of a single witness is sufficient to support a

conviction," *United States v. Osborne*, 886 F.3d 604, 613 (6th Cir. 2018) (quoting U*nited States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012)),[2] and White identified Petitioner as the suspect at both the pretrial line-up and at trial.

Moreover, the *Jackson "*standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. A reviewing court "does not reweigh the evidence or redetermine the credibility of witnesses . . . ." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Id*.

The trial court stated at the conclusion of Petitioner's trial that it did not believe Petitioner's alibi witness. Although the court acquitted Petitioner of unarmed robbery because White was unconscious during the actual robbery, the court noted that White was in close proximity to Petitioner during the crime, she remembered Petitioner's eyes, she identified him at the line-up, and she was able to describe Petitioner to the police. *See* 6/20/14 Trial Tr. at 87-88, ECF No. 7-7, PageID.366-367.

---

[2] *See also Brown v. Davis*, 752 F.2d 1142, 1144-45 (6th Cir. 1983) (stating that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction").

The Michigan Court of Appeals subsequently concluded that the trial "court could determine beyond a reasonable doubt that defendant was the person who committed these offenses." *Phillip*, 2016 WL 1445338, at *6. This Court agrees that a rational trier of fact could conclude from the evidence taken in the light most favorable to the prosecution that Petitioner committed the crimes. Thus, the evidence at trial was sufficient to support Petitioner's convictions.

Furthermore, the Court must defer to the findings and conclusions of the state trial court as the finder of fact and to the state appellate court, which was the last state court to adjudicate Petitioner's claim in a reasoned decision. Petitioner, therefore, has no right to relief on his challenge to the sufficiency of the evidence.

## D. Trial Counsel

In his fourth and final claim, Petitioner alleges that his trial attorney was ineffective. Petitioner asserts that counsel (1) failed to impeach the parties' testimonies and (2) convinced him that a bench trial was best and that his chance of going home was eighty percent. Petitioner claims that, if he had known what he knows now, he would have realized that a bench trial was not best for him. *See* Pet., ECF No. 1, PageID.26-27.

20

The State maintains that Petitioner did not exhaust state remedies for this claim, because

> Phillip never raised his ineffective-assistance claim related to his trial counsel's failure to impeach on appeal—to either the Michigan Court of Appeals or the Michigan Supreme Court. And though Phillip did raise his ineffective-assistance claim based on his jury-trial waiver in the Michigan Court of Appeals, he did not reassert that claim in the Michigan Supreme Court.

Answer in Opp'n to Pet., ECF No. 11, PageID. 639 (citations to the record omitted).

Although this is true, the rule requiring exhaustion of state remedies is not a jurisdictional requirement. *Castille v. Peoples*, 489 U.S. 346, 349 (1989). A federal district court may deny a habeas petition on the merits, despite the petitioner's failure to exhaust available state remedies. 28 U.S.C. § 2254(b)(2). The Court, therefore, will proceed to address Petitioner's claim, as the claim lacks merit. The Court reviews *de novo* Petitioner's claim about trial counsel's failure to impeach witnesses, because no state court adjudicated that claim on the merits. *See Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (stating that, "[i]f . . . the petitioner's claim was never 'adjudicated on the merits' by a state court, . . . deference [under 28 U.S.C. § 2254(d)] no longer applies" and "the petitioner's claim is reviewed *de novo* as it would be on direct appeal").

## 1. Clearly Established Federal Law

To prevail on his claim about trial counsel, Petitioner must show that his trial "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

### 2.  Application

#### a.  Impeachment of Witnesses

Petitioner asserts that his trial attorney failed to impeach the parties' testimonies.  The record, however, demonstrates that counsel carefully cross-examined each of the three prosecution witnesses.  Counsel tried to impeach White with her pretrial identification of Petitioner and with inconsistencies between her trial testimony and what she told the police after the crimes.  *See* 5/2/14 Trial Tr. at 26-54, ECF No. 7-6, PageID.248-276.

The other prosecution witnesses were retired Sergeant Scott Rechtizigel, who responded to White's call about the assault and robbery, and Detective Delgreco, who investigated the case and conducted the line-up.  Defense counsel questioned Rechtizigel about his failure to conduct an on-scene identification at Petitioner's arrest and his arrest of Petitioner on an anonymous tip.  *See* 6/20/14 Trial Tr. at 24-26, ECF No. 7-7, PageID.303-305.

Defense counsel cross-examined Delgreco about the suggestiveness of the line-up, his failure to take a photograph of the line-up, and whether he discussed the case with White when he transported her to the line-up.  *Id*. at 33-39, PageID.312-318.  Counsel's cross-examination of witnesses was adequate and thorough.

To the extent Petitioner alleges that trial counsel should have challenged the great weight of the evidence, *see* Pet., ECF No. 1, PageID.27, Petitioner's claim fails, because defense counsel challenged the sufficiency of the evidence during his closing argument.   He argued that eyewitness testimony is not the best form of evidence, especially when, as in Petitioner's case, the suspect was a stranger and the victim was under stress.   Defense counsel also pointed out inconsistencies between White's trial testimony and what she told the police shortly after the crimes.   He claimed that White's testimony about turning around while she was being choked from behind was not plausible, and he stated that White chose Petitioner in the line-up merely because Petitioner looked angry.   *See* 6/20/14 Trial Tr. at 81-84, ECF 7-7, PageID.360-363.

Defense counsel noted that there was no physical evidence in the case and that Petitioner did not possess any evidence at his arrest.   Counsel also attacked Petitioner's arrest without an on-scene identification and solely on an anonymous tip.   Counsel summarized Wheeler's testimony, and he stated that the trial court had only eyewitness testimony, that White was mistaken about Petitioner being the person who committed the crimes, and that the prosecution had not proved its case beyond a reasonable doubt.   *See id*. at 84-86, PageID.363-365.

Defense counsel's performance was objectively reasonable, and because White's testimony was strong, there is not a reasonable probability that the result of the trial would have been different if counsel had done more to challenge the evidence or to impeach prosecution witnesses. Defense counsel satisfied *Strickland's* deferential standard. Therefore, Petitioner is not entitled to relief on his first claim about trial counsel.

### b.  Waiver of a Jury Trial

Petitioner's other claim, about defense counsel is that counsel convinced him to waive his right to a jury trial. The Michigan Court of Appeals found no merit in this claim because Petitioner knowingly and voluntarily waived his right to a jury trial in accordance with state law, and because Petitioner was "unable to demonstrate that he was improperly pressured into waiving his jury trial right." *Philip*, 2016 WL 1445238, at *6.

### i.  Legal Framework

Petitioner had a constitutional right to a jury trial because he was charged with a crime, and "[i]f you're charged with a crime, the Sixth Amendment guarantees you the right to a jury trial." *Hester v. United States*, 139 S. Ct. 509, 509 (2019), Gorsuch, J., dissenting from the denial of certiorari. "[T]he Sixth Amendment right to a jury trial is 'fundamental to the American scheme of justice' and incorporated

against the States under the Fourteenth Amendment." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020) (quoting *Duncan v. Louisiana*, 391 U.S. 145, 148-150 (1968)).

Petitioner also had the authority to make certain fundamental decisions about his case, including whether to waive a jury. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). And "[b]ecause the right to a jury trial is fundamental, a waiver of that right must be voluntary, knowing, and intelligent." *Otte v. Houk*, 654 F.3d 594, 600 (6th Cir. 2011) (citing *Haliym v. Mitchell,* 492 F.3d 680, 698 (6th Cir. 2007) (citing *Duncan v. Louisiana,* 391 U.S. 145, 149 (1968), and *Brady v. United States,* 397 U.S. 742, 748 (1970)).

But "[a] petitioner bears the burden of proving that his waiver was not, in fact, voluntary, knowing, and intelligent. *Id.* at 601. "[T]he dispositive inquiry is whether the defendant understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge." *Jells v. Mitchell*, 538 F.3d 478, 510 (6th Cir. 2008) (quotations marks and citations omitted).

### ii. Application

Petitioner waived his right to a jury trial on the record at one of the hearings on his pretrial motions. He stated that he understood his right to have his case heard

by a jury, that he had discussed the matter with his attorney, and that he understood the court, and not a jury, would be the trier of fact.  He reassured the court two times that nobody had promised him anything to make him waive a jury and that no one had threatened or coerced him into waiving a jury.  He also said that he wanted to waive his right to a jury trial and that he was waiving the right of his own free will. *See* 4/30/14 Mot. Hr'g Tr. at 23-24, ECF No. 7-5, PageID.219-220.  Based on this record, the contention that defense counsel somehow coerced Petitioner into waiving a jury trial fails.

The state appellate court's determination that Petitioner's claim lacked merit was objectively reasonable.  Petitioner, therefore, has no right to relief on his second claim about trial counsel.

## IV.  Conclusion

The state appellate court's rejection of Petitioner's first claim regarding the line-up, his third claim regarding the sufficiency of the evidence, and the second part of his fourth claim about the waiver of a jury trial was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  Petitioner's second claim about his arrest and detention is not cognizable on habeas review, and the first part of his fourth

claim regarding trial counsel's alleged failure to impeach prosecution witnesses lacks merit.  Accordingly, the Court denies the petition for a writ of habeas corpus.

The Court declines to issue a certificate of appealability because Petitioner has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Petitioner also has not demonstrated that reasonable jurists could disagree with the Court's resolution of his claims or that the issues are adequate to deserve encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Nevertheless, Petitioner may proceed *in forma pauperis* on appeal if he appeals this decision, because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

     s/Arthur J. Tarnow

ARTHUR J. TARNOW

Dated:  October 16, 2020     SENIOR UNITED STATES DISTRICT JUDGE